Next case is number 24-1298 Brian Trematore Plumbing and Heating Inc. against Sheet Metal Workers Local Union 25. Mr. Alessi. Good morning. If it pleases the court, it's Dennis Alessi from Mandelbaum Barrett, and I represent the plaintiff, Brian Trematore Plumbing and Heating. I would like two minutes for rebuttal, please.  Thank you, Your Honor. Let me start by first dealing with the facts of the case, and then I'll discuss the law. We're familiar with the facts. Okay. Um, well, so let's assume that not the one employee rule could apply to some 9A agreements, but why would it apply here to gut the nonrepudiation clause? I don't see any precedents you've cited that have allowed that to trump an agreement. And the contracting out here, it's not like you exited this line of work or something. The cases you cite are where the employer stepped out. Are you saying an employer can manufacture a zero-man unit just by refusing to hire union workers but staying in the line of business? Well, that just gets to the facts that I wanted to get into, that I think that there's been a misrepresentation of the facts. Okay, so are you saying, no, you can't do that, but that's not what happened here, or yes, we can do that? No, that's not what happened here. Okay. Let me be clear. What happened here was, on September 9th, 2018, was the last day that any local 25 member was employed. And Termitor Plumbing didn't do any air HVAC work, either with its own employees or subcontracting out, because there's a subcontracting provision in the Collective Bargaining Agreement. I acknowledge that that's there. From September 2018 until May 6, 2020, which was 20 months, he was completely out of the business. He didn't do any work with his own employees. That was air HVAC, and he didn't subcontract out. But the CBA was still in effect. The CBA was still in effect, but there are cases that say that if you comply with the one-man unit rule, it doesn't matter. Even in the face of a Collective Bargaining Agreement still being in place, if you satisfy that rule, the Collective Bargaining Agreement does not trump. So the proposition then is that the one-man unit rule trumps the non-refugiation provision? Yes, and in fact, that exact word is used by the Sixth Circuit in Baker Electric. It says the one-man unit rule trumps the Collective Bargaining Agreement. But in Baker, they weren't still under this CBA. No, they weren't. Was there a non-refugiation clause in the Baker case? I can't tell you that standing right now, but I know that the union was arguing that the Collective Bargaining Agreement still bound the employer. And what the court said was, no, the employer complied with the one-man unit rule, and that trumps the Collective Bargaining Agreement. The NLRB has said the same thing. You don't have any case in which the one-man unit rule trumps a non-refugiation provision? No, the Baker Electric addressed that, Your Honor. Excuse me a moment. It says... Baker Concrete? It says that it trumps any provision...  One moment, Your Honor. Page 24 of our reply brief.  Quoting from Baker Concrete. Okay, what page? Page 24, Your Honor. Page... 24 of our reply brief. Okay, the non-refugiation... First of all, which page in Baker Concrete are we talking about? What page do you cite there? Oh, um... I'm sorry, Your Honor. At 214 WL, at pages 3 and 4, Baker Concrete. Baker Concrete is 820 F3rd. This is the district court decision. Okay. I'm sorry. Not the Sixth Circuit decision? No, the district court. Okay. And it says the one-man unit rule trumps any CBA language that purports to indefinitely bind a signatory employer until that employer terminates under the agreement's terms. Okay, so... But here we have a provision, and what I mean by non-refugiation, a provision that says you waive any right to modify or terminate the agreement. Right. But Baker does not... Did not involve that. Well, it says any agreement. But the facts did not involve that, and the court had no occasion to consider such a provision. Well, but you get back to the point that the law trumps a contract. They said something broad that could be extended there. Why should we follow it and extend the holding of that case to a different clause that wasn't considered and wasn't at issue there? Why should we say that... Because the underpinning of the entire NLRA is collectivity. Whether you have an 8A agreement or you have... I'm sorry, if you have an 8F or a 9A, there's no collectivity. That, I think, is a very good argument as to why the one-employee rule should apply to 8F as well as 9A pre-hire. We agree that 9A is construction industry, pre-hire. It's different. But you've made the argument that the principle should... Is equally applicable to 8F because how could you collectively bargain with no one or with one?  Okay. So I'm granting you all that. Thank you. I'm saying let's accept all of that as a persuasive argument. Now, the question becomes what happens if there's a collective bargaining agreement, which is a contract, enforceable at law, that says that one or both parties are prohibited from repudiating that contract. And that contract has a very specific scheme that tells the parties how they can unwind this agreement or have it die. And I understand your complaint is that it can't be the case that my client is stuck forever in this thing. Exactly. Okay, that has some common sense appeal. The problem is the CBA says the opposite. The CBA has an evergreen provision and the CBA has a non-repudiation clause. So what authority do you have to say that those legal requirements embedded in an enforceable contract somehow evaporate because of your theory of the one employee rule? Well, for two reasons. First of all, because you have the general concept is that the law... Again, to use the word Trump, the law trumps a contract. A contract can't be contrary to the law. You can't enforce a provision in a contract that's contrary to the law. But then you waive that provision in the law.  And the one employee rule is not something in a statute. We're not dealing with one statute being supreme to the other in the event of a conflict. It's a commonsensical judge-made rule, isn't it? The one employee rule? Well, no. It goes back to the concept of collectivity. It's based on the underpinning of the NLRA that there has to be collectivity. Okay. So there was collectivity when it was negotiated. And I get that you can't negotiate with no one. But it was negotiated with people. There was a gap of time when you weren't doing this work. Now there are people in this work. Why is this just not an issue when it comes time to renegotiate or renew? Why should it gut it if at any point in the middle you got out of the line of work? Well, because the cases say that if you comply with the one-man unit rule, you can... They say it, but none of the cases involved this situation. You can repudiate the agreement even midterm. Every case that was cited to you, when you look at the facts, they repudiated midterm. Okay, Mr. Alessi, let me ask you this question. Sure. And the Article 17 of the CBA, Section 4, is the non-repudiation provision. Okay. And it says that each employer hereby waives any right it may have to repudiate this agreement during the term of this agreement. As it relates to this case where the CBA that your client signed was the 2015 to 2018 CBA, what is the term that we're dealing with here? That depends on whether you determine that the 2018-2021 agreement was recognized by the fact that Tremetor, for a period of four or five months, from June of 2018 through September of 2018, did pay the local 25 members consistent with the 2018-2021. Okay. And if you accept that action, which of course we dispute, we cited cases that say that, but if you accept that fact, let's take it from a viewpoint most favorable to local 25, that Tremetor ratified that agreement by taking those actions, then you would say it's the 2018-2021. And in March, actually at multiple times, I'm sorry, in May of 2019, there was a letter that repudiated. Again, in February of 2021, there was another letter that repudiated. And again, on March 5th, 2021, there was another letter that repudiated. There were three times. So you're saying that the Evergreen Clause, which is also in Article 17 and Section 1, you're saying that the Evergreen Clause extends the agreement language beyond the term of the 2015-18 to the 2018-2021? No, what I'm saying is that if you accept local 25's argument that there was a ratification through course of conduct for a few months to pay a few men the higher rate wages under the 2018-21 agreement, if you accept that argument, then it's a 2018-2021 agreement. My argument then is that we properly repudiated that agreement. Let's talk about the relationship between the statute and the contract. You're right, a contract can't violate the law, but the law doesn't require you to repudiate. It just gives you a statutory right to repudiate at best. So your friend on the other side's argument is we should read the words in the contract. They say you agreed to waive any right. Why shouldn't we read the waiver of any right, which is broad, as waiving the statutory right also? What in the statute makes that waiver of a possibility invalid, unwaivable? It really goes back to what I said earlier, because the whole underpinning of the whole statutory scheme is collectivity. How can I waive collectivity when the entire NLRA is based on it? And in fact, that's the point, and we haven't really discussed any decisions by the labor board, but the labor board have made that point. Okay, but we're not bound by the labor board. No, I understand that. I understand that you're not. But the point is, I think, obviously the decisions of the board are something that you should consider. What have they said that should persuade us to adopt this very broad reading? What they've said is, again, in Foreign Car, they said that we will not certify a one-person unit because it's contrary to the underpinning of the statute, which is collectivity. Okay, but we're not asking them to certify it. Please, but the next thing that they said was, for the same reason, we won't require an employer to negotiate with a union when there's only one employee. And so I think that case, combined with SAC contracting, I assume my time is up, are the two cases that say that we are permitted to repudiate under the one-man unit rule, notwithstanding the provisions in the collective bond agreement that essentially bind us forever. But thank you. Thank you. We'll hear you on rebuttal. Let's hear from Mr. Zurofsky. Give me a moment, please.  Senator Zurofsky, on behalf of Sheet Metal Workers Local Union No. 25. May it please the court. I think your questions to my adversary were quite pointed, and I'd like to respond to those points, if I may. To begin with, on the term of the agreement, Judge Martinotti, although, held that the argument that they were not bound to the 2018 to 21 agreement was nonsensical. I'm sorry, borderline nonsensical. And he's right. All right. Can you start with a factual matter, help us to understand what's the status of the NLRB appeal here? Has it issued a decision yet? No, it has not. It's been fully briefed for nearly a year, but it has not issued a decision and right now the NLRB is completely disabled due to the lack of a quorum. Got it. If the one employee rule applies here, does it void the whole contract, including this clause? No. Very, very simply. I mean, your decision, it wouldn't even apply if this was a full 8F agreement. And I think you were correct to try and focus on the statutory language. They recognized us originally purely as an 8F contract, which is a pre-hire agreement. And then due to our organizing campaign, they recognized us under 9A as a fully certified representative majority. Now, as they point out in their brief, the one employer unit rule is a corollary of the basic rule in industrial unions or all other unions except the construction trade. Every union outside of the construction trade, that they won't certify a unit with only one employee. Okay. Now, that's not the requirement for a contractor to enter into an agreement with the union. Under 8F, at the time they entered to pre-hire agreements, there were zero employees. Now, all those pre-hire, all the terms of the pre-hire agreement are in our new contract. As a matter of fact, the contract that they signed on May 23rd was identical to the pre-hire agreement they signed, to the site agreement that they signed, except that it removed the language that said this contract is limited just to this one project. That's the only difference between the two contracts. So there's no reason why having acquired 9A status, we would have less right to protect our contract and enforce it during its term, including the evergreen provisions, which have been held by many courts to be enforceable in the 8B7. And even after the expiration of an 8F contract, they've been held to be enforceable when it's just an 8F agreement. There's no reason why we would lose that right. But if you treat us at an 8F, this court affirmed the board's landmark decision in DECLAW. And DECLAW was a midterm renunciation of an 8F agreement by John DECLAW and Sons. And it's a landmark NLRB decision. Appeals were taken to this court by both the union and the employer in that case, because at that point, the NLRB totally rewrote the rules that affected 8F agreements. And the precedence that, that was a 1988 decision, the precedence that Mr. Elessie cites generally predate the DECLAW decision. And in DECLAW, they said, here I have the language. Give me a moment. Can I actually ask you about jurisdiction for a little bit? I wanted to understand a little better how to think about the concurrent jurisdiction with the NLRB here, if that's all right. Okay. I think Judge Martinati got it exactly correct. Well, what I understand is, you know, when we look at the Sixth Circuit and IBEU versus Trapatek, we treat it as mainly representational if the board has already exercised jurisdiction over a matter and is either considering it or has already decided the matter. If we do that, like here, the ALJ concluded the rule didn't apply. If the board's considering this appeal, does that mean we don't have jurisdiction to decide the one employee unit rule question at all? Well, I, I originally argued that below in a motion to dismiss, which Judge Vasquez denied. After, after he denied it, we then filed a counterclaim. And that counterclaim sought to compel, sought to compel arbitration. I think that one of the things I had to prove was that I had a valid contract. So, although it's generally true under your cases that an unfair labor practice cannot be presented as a defense in a section 301, Judge Vasquez concluded that he should consider it because Tremitor was arguing that it was an invalid contract. And therefore, he thought that he had to apply the board law and we did not continue any appeal from the jurisdictional issue. And, you know, if this court was to agree with, you know, if the court was to agree with Judge Vasquez and dismiss the complaint, that would be fine with me. It would be gratifying, but I still want to make sure that this arbitration, which has already held them liable, is an enforceable award. And I need my counterclaim ruled on. Let's say we have jurisdiction over the one employee unit rule. Why wouldn't we also have jurisdiction over the injunctive relief if there's valid repudiation or not? What's, what's left for the representational questions? Well, Your Honor, I don't think he reached it, not just because for jurisdiction, but because he had, he had already decided that it didn't apply to this case and was valid and there was nothing to enjoin. Had he decided there was not a valid contract, he may very well have issued an injunction. But I think his saying that the board should still decide recognizes, I think he's exercising traditional restraint, traditional modesty. I'm a district court judge. I don't have the same expertise in this law as the National Labor Relations Board does. This is within their primary jurisdiction. I'm not going to make a definitive statement about representational issues, and they're litigating those representational issues there, and they should have the final say. I think his ruling on is entirely appropriate because it has that modesty. Now, I know for a fact that the board agent that's handling this case is very interested in the results today. He was thinking of coming down to the argument, but apparently couldn't get permission to come down on business time to hear the argument. Whatever you say about that, and it's perfectly fine with me if you just say it can't be entertained by this court. I'd be very happy to hear that my case is very simple. Let's assume for a minute that that we find persuasive Mr. Lessie's argument that the one employee unit rule equally applies to 8F and 9A. I take your argument is that, okay, you're not happy about that, but the terms of the contract are still efficacious, and the non-repudiation clause carries the day for you because if Tremitore wanted to extricate from the CBA, it had to proceed differently than the manner that it did. Do I understand? Is that your argument or do you have a different argument? My argument, you know, again, let's turn to the act. 8D says that once you're recognized under Section 9, that recognition stays until such time as the labor organization has been superseded or ceased to be the representative of the employees subject to 8A, that they have to go through a board procedure. To negotiate their way out of it, they have to... No, or there are other procedures other than negotiation. For example, they could have just defended our unfair practice charge, which is what they did. They offered the one man unit rule in defense of our unfair practice charge. You know, under the Garman line of cases, they say you should defer to them, especially, you know, it got muddied up a bit by the more recent decision of the court, but you have to defer to them, except there are cases when you can't defer, so it's not in front of the board, and they have no opportunity to present this argument. The theory of my original motion to dismiss is that they have every opportunity there, and that's the proper form, and I wanted to stay there, but when Judge Vasquez told me he couldn't, in filing my papers, I gave him unquestioned jurisdiction over Section 301 by seeking purely 301 relief. The board has nothing to do with enforcing arbitration agreements or with enforcing arbitration awards. At this point, we have half an award, and we'll go on to damages, depending on whether we prevail here or not. All right, so I understand your answer to my question would be that even if the one employee rule applies to both, you win not only because of the terms of the contract, but also the language of 8D in the Act. Yes, but it's very important. Again, back in Declaw, it was midterm, and they said very clearly that, and this court endorsed that language especially, and thought it was sensible. They quoted it in the opinion at their conclusion that they cannot renounce the 8F agreement during its term. They have to wait until the end of its term. Let me just one more question to close the loop on this. Why shouldn't we say that for purposes of 8F, 9A, the one employee unit rule should be applied equally because, as Mr. Alessi pointed out in his briefing, the foundation of the doctrine, which I think has traced a foreign car or maybe even a case before foreign car, arose in the context that he's advocating for here. Because, again, the statute itself, Section 8F. And 8F explicitly says it shall not be an unfair labor practice for an employer engaged primarily in the building and construction industry to make an agreement because the majority status of such labor organization has not been established under provisions of Section 9 of this Act prior to the making of such agreement. 8F Congress explicitly exempts the construction industry from the normal requirements of Section 9. Now, I left out a few words in my quote to make it a bit clearer, but that's clearly what they're doing there. Pre-hire agreements are absolutely illegal, and at the time they're made, the employers have to leave no employees. And as this court and other courts have pointed out consistently, the construction industry is an irregular industry. I get all that, but that doesn't, I don't think, tell us why, in a 9A context, it should apply just as well because how do you collectively bargain with no one or with one person? I mean, isn't it possible that in some cases a company is in the trade, they do have union members, and then, I mean, in the Baker Concrete case, it appeared that there had been a decade went by where they no longer had any employees that were bargaining unit members. I'm asking, I guess, a more philosophical question or a logical question. Why wouldn't we apply it equally to 9A? Because you can't collectively bargain with no one or with one person. Two reasons. Number one, our contract is an 8F agreement as well as being a 9A agreement. We certainly don't get rights that we had when it was a simple 8F agreement and suddenly lose them. But that makes it more likely that one employee rule should apply to your case. If you're saying it was originally 8F and now it's 9A, why wouldn't that? Because we establish greater rights, because we establish full rights under the Act, why would we have fewer rights than we had when we didn't have full rights under the Act? We still have the advantage of 8F. I do want to talk about Baker Concrete. I'm not sure you have fewer rights because you still, the paradigm that I'm positing here is that the one employee rule applies to both 8F and 9A, but the terms of your collective bargaining agreement are not vitiated or trumped by the one employee unit rule. Well, once you're 9A, you can't repudiate without going through the procedures of the board. You can't repudiate without going through the procedures of the board. Section 8D says that. So I think if you read 8D, 8E, and 8F, they all apply to this contract and make it enforceable. I do want to comment. Okay, but that doesn't, I don't think, in any way undermine the notion that the one employee rule applies to both. Perhaps if the board thinks it does, I don't think there's any indication in any board precedent that it would reach that conclusion, especially like you. What difference does it make if we say it does? Well, you're the Third Circuit Court of Appeals, you're higher than the board. Okay, so if we say it does, your argument can't be bootstrapped by what the NLRB says it is. Well, this is certainly not the case to say it is, because within what was plainly the term of the contract, you have three cases where we caught them doing sheet metal work, all within the original three years, less than three years from when they signed the original contract. That's the normal term of any contract before a petition can be filed. And we have subcontracting, which due to 8E, due to 8E, we're entitled to protect. Subcontracting assumes, the fact that we have subcontracting is covered, it assumes they're not directly employing people. Hold on a minute. Hold on a minute. Can you? Okay. I'm sorry, Judge Fischer. I understand. You're right. Red light's on. I want to pursue one other question.  So, on February 26, 2021, Trimitor gave you notice that they were not bound to negotiate a new CBA. Yes. Okay. And the union responded. The union responded, but that was an attempt to repudiate at the end of the term of the 1821 agreement, which came on May 31st, 2021. Why shouldn't they have been allowed to have done that? Because there's a non-repudiation clause in the contract that's still in effect. The contract was in effect until May 31 under any obligation. It has non-repudiation. Didn't the Evergreen clause only extend to the end of 2021? No, it did not, Your Honor, because they have never done any of the things that a contract requires them to do. They did, and on February 26, 2021, they said, we want to repudiate as of the end of this contract year, which is May 31st. Weren't they permitted to do that?  Because the case you cited said they couldn't repudiate midterm. They're saying, we want to repudiate at the end of the term. They can't say that. Why? Because the repudiation clause itself, during the term of this agreement, or during the term of any extension, modification, or amendment of the agreement, in the Evergreen clause, which is Section 1. So you're saying the Evergreen clause can extend this agreement in perpetuity? No, it can't extend it to perpetuity. They have to go through certain steps. Well, they did. They did, you notice, February 25th, 2021. That's not what the Evergreen says. The Evergreen clause says, shall continue in force and effect until conferences relating thereto have been terminated by either party by written notice. It says from year to year. It says from year to year. Yes. And my question is, if they can't get out of it at the end of May of 2021, you must be arguing that it extends in perpetuity. No, I'm arguing that it extends to an interest arbitration, and the interest arbitration would certainly award a three-year contract bringing them past 21. But the interest arbitrators do not award interest arbitration in the successor contract. There's a Third Circuit case, which I cite in my papers, which makes that plain, and I'll give you the cite. It was a lower court decision in Summit Sheet Metal versus Sheet Metal Workers International Association. It's in my papers, and it was affirmed by this court at 594 Federal Appendix 733 in 2014. That case says that interest arbitrators can't award a new interest arbitration in the agreement that they give over the objection of either of the parties. So it is not eternal. It is, at most, an additional three-year term that the interest arbitrator award. The way interest arbitration works is you can test specific provisions. You're saying the less things change here between Local 25 and Trematur, they're off the hook at the end of 2024. I'm not saying that. You just said that. No, I didn't say that. Had they followed the procedures. They had to invoke the interest. Had they invoked the interest, they couldn't get it now. If they invoke it now, our current contract runs through 2029. We just signed a five-year agreement with all the other employers. It's all about the way they've tried to extricate from the agreement. Yes, they didn't use the contract procedures, and they didn't use the board procedures. They used no procedures. And if I may, I know I'm over time. I just want to point one thing out about Baker. You don't want us to follow what the district court did there. Because what the district court did there was it blew up the agreement by using the one-employer rule. Yes, but they didn't cite in their briefs. But I cited in footnote four of my brief that the Sixth Circuit, although they affirmed that the contract didn't exist, emphasized that 8F agreements, by their very nature, are tentative and anticipatory. They said they stressed the differences between 9A contracts and 8F contracts in their affirmance. And that's on page 820F3 at page 832. It's footnote four of my brief, which is on page 16 of my brief. So they took an unpublished lower court decision, and they didn't bother to cite the Sixth Circuit decision. My footnote suggests it's because they read it, and they saw that it was not helpful. Thank you, and thank you for allowing me to make that last point. Thank you, Mr. Zurofsky. We'll hear rebuttal from Mr. Alessi. The Third Circuit in International Union of Bricklayers said that an evergreen cause is a provision, and I'm quoting, by which the existing contract, the CBA, could be renewed indefinitely. So that's the definition that the circuit said in the past. What Mr. Zurofsky said about interest arbitration, the point there is the interest arbitrator can't award interest arbitration. He can't say, okay, the next contract will also be decided by interest arbitration. That doesn't say that he can't award an evergreen provision. An evergreen provision, I've been an employment lawyer for 50 years, and I've never seen a collective bargaining agreement that didn't have an evergreen provision in it. If you were to hold that the evergreen provision and the other provisions related to that trump the one-man unit rule, then it's backwards. It's not the evergreen provision. It's the nonrepudiation. They're waiving any right. Yes, but again, it gets back to what I said earlier. Can you waive a right that's based on the basic concept of the statute? You can waive all kinds of things. You can waive your right to a jury. You can waive your right to a trial. You can waive any constitutional right you want. So why can't you also waive a statutory right? Well, because if you say that you waive the statutory right, then really between that and the evergreen clause, the one-man unit rule really doesn't exist because you've got that clause in every provision. It exists in 8F cases. It exists beforehand. It just doesn't exist once you're under a CBA that's going that binds. But then what that means is that you can never end that relationship. There's no provision. No, you end the relationship by following the procedures laid out in the CBA, namely you either negotiate your way out of it or you go to interest arbitration. Those are at least two off ramps, aren't they? Well, no, that's the point that we made in our initial brief. There really is no way to get out under the contract. Why? People aren't interested. You can't renegotiate. Why isn't interest arbitration or renegotiation? Why are those not? Because the purpose of interest arbitration is to determine what the terms are of the successor collective bond agreement, not to decide that you have the right to repudiate the agreement. The interest arbitrator is limited to deciding, okay, you cannot decide amongst yourselves, the union employer, what the terms are for the successor agreement. So the interest arbitrator is going to impose it on you. It's going to be a three-year extension, and then that's the end of it. Yeah, the interest arbitrator doesn't have the authority to say, you know what, you want to repudiate the collective bond agreement? Okay, fine, I'll let you do that. That's not the job of the interest arbitrator. Okay, so you get a three-year extension, and then it's done, right? Well, I could say it's true that there are procedures that the employer can use with the labor board to try, but there it's a decertification petition. It has to be signed by the employees. The employer cannot pursue that. So there is no procedure. And like what Mr. Zyrowski said, there is no procedure before the labor board where an employer on their own initiative can file a petition to basically be able to repudiate the CBA. They can't pursue interest arbitration? Well, that's not what an interest arbitrator does. An interest arbitrator decides what the terms are for the successor agreement. Right, and isn't it the case that if you, quote, lose the interest arbitration, the upshot of that is that you're on the hook on the CBA for another three years? With new terms that the arbitrator has set, yes. Okay, and then it's over after that three-year period. No, not if you've got an evergreen provision, no. Then you've got to maintain the terms of the existing collective bond agreement. An interest arbitrator imposes that on you. Well, to go back to what I said earlier, I've never seen a contract that didn't have an evergreen clause in it. Keep in mind, also, the evergreen clause is based on the provisions in the statute that says that the employer is obligated to maintain the terms and conditions of employment while a successor agreement is negotiated. So how are you not going to have an evergreen provision? If you have the imposed evergreen, they don't necessarily impose a non-repudiation, and then you're in a different position in the next contract. But then you're back to the point also. If you have a non-repudiation, that means you can never really get out of the collective bonding relationship. I'll just point out one other thing, and that is that Mr. Zerofsky talked about, however you pronounce it, the Koala decision. All that decision talked about was, previously to that decision, if you had an AF, the employer could terminate the AF-AF agreement midterm. What the Koala said, no, that's too disruptive of the employer-union relationship. So what that case simply said was, you cannot repudiate the AF until the end of its term. That's all that case said. And then in J.W. Peters, which I think was the Seventh Circuit, said that the one-man-unit rule is an exception to the Koala. So the Koala does not help Mr. Zerofsky the way he says that it does. All right. Thank you, Mr. Alessi. Thank you, Mr. Zerofsky. The court will take the case under advisement. Thank you.